FILED
2025 Mar-17  AM 08:54
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

MARCELLUS WILLIAMS,      )
                       )
      Plaintiff,      )
                       )
v.                    )     Case No. 4:21-cv-00921-MHH-HNJ
                       )
JEFFERSON DUNN, *et al.*,     )
                       )
      Defendants.     )

## MEMORANDUM OPINION AND ORDER

Plaintiff Marcellus Williams is an inmate at St. Clair Correctional Facility. After another inmate stabbed Mr. Williams in St. Clair's restricted housing unit, Mr. Williams sued the Alabama Department of Corrections and St. Clair prison officials. (Doc. 1). Mr. Williams asserts § 1983 claims for excessive inmate violence under the Eighth Amendment, state created danger under the Eighth and Fourteenth Amendments, and failure to intervene. (Doc. 1, pp. 59-62).[1] Mr. Williams also

---

[1] As the magistrate judge noted, Mr. Williams bases his excessive inmate violence claim on a generalized risk of inmate-on-inmate violence at St. Clair, not on a failure to protect based on a specific or individualized threat to Mr. Williams's safety. (Doc. 39, pp. 28-29, n. 10); *see also Est. of Owens v. GEO Grp., Inc.*, 660 Fed. Appx. 763, 769, 771 (11th Cir. 2016) (explaining that § 1983 plaintiffs may bring a failure to protect under two different theories: a "particularized risk claim" where the plaintiff was a "target of a specific threat or danger" of which the prison officials were aware and failed to alleviate the risk; and a "dangerous prisons conditions claim" or generalized risk of inmate violence claim where the plaintiff demonstrates that the prison conditions to which he was subjected "were so dangerous that [the conditions] resulted in cruel and unusual punishment").

asserts claims under Alabama law for outrage and negligence. (Doc. 1, pp. 62-64).[2]
The defendants have moved to strike or dismiss Mr. Williams's complaint as an
impermissible shotgun pleading. The defendants also seek dismissal under Rule
12(b)(6) of the Federal Rules of Civil Procedure because the defendants contend that
Mr. Williams has failed to state a claim. (Docs. 18, 19, 20, 21).

The magistrate judge entered a report in which he recommended that the Court
deny the defendants' motions to strike and grant in part and deny in part the
defendants' motions to dismiss. (Doc. 39). Mr. Williams and the defendants have
filed objections to the report. (Docs. 44, 45, 46, 47, 48).

When a magistrate judge issues a report and recommendation regarding a
dispositive motion, a district court "may accept, reject, or modify, in whole or in
part, the findings or recommendations made by the magistrate judge." 28 U.S.C. §
636(b)(1)(C). A district judge must "make a *de novo* determination of those portions
of the [magistrate judge's] report or specified proposed findings or recommendations
to which objection is made." 28 U.S.C. § 636(b)(1); *see also* FED. R. CIV. P. 72(b)(3)
("The district judge must determine *de novo* any part of the magistrate judge's
disposition that has been properly objected to."). A district court's obligation to

---

[2] As the magistrate judge noted, Mr. Williams labeled his claim as intentional infliction of
emotional distress, (Doc. 1, p. 62), which is the same as a claim for the tort of outrage under
Alabama law. (Doc. 39, p. 93, n. 30) (citing *Thomas v. Williams*, 21 So. 3d 1234, 1237 (Ala. Civ.
App. 2008)).

"'make a de novo *determination* of those portions of the report or specified proposed findings or recommendations to which objection is made,'" 447 U.S. at 673 (quoting 28 U.S.C. § 636(b)(1)), requires a district judge to "'give *fresh consideration* to those issues to which specific objection has been made by a party,'" 447 U.S. at 675 (quoting House Report No. 94-1609, p. 3 (1976)).  *United States v. Raddatz*, 447 U.S. 667 (1980) (emphasis in *Raddatz*).

### *Count I—Excessive Risk of Inmate Violence*

St. Clair supervisors Bolling, Pickens, Malone, and White object to the magistrate judge's conclusion that Mr. Williams has sufficiently pleaded an Eighth Amendment excessive risk of inmate violence claim against them.  (Doc. 44, p. 3).  In his report, the magistrate judge accurately discussed the law regarding excessive risk of inmate violence and qualified immunity, and no party objects to that discussion.  (*See* Doc. 39, pp. 26-49; Doc. 44, pp. 3-4; Doc. 45, p. 6; Doc. 47, p. 4).[3] The St. Clair supervisors challenge the magistrate judge's conclusions "as to both

---

[3]  After the magistrate judge entered his report and recommendation, the Eleventh Circuit decided *Wade v. McDade*, 106 F.4th 1251 (11th Cir. 2024).  In *Wade*, the Eleventh Circuit explained that to prove that a prison official violated the Eighth Amendment, a prisoner must establish the prison official's subjective awareness that his conduct, whether it be action or inaction, "put the plaintiff at substantial risk of serious harm," with the caveat that  "even if the defendant 'actually knew of a substantial risk to inmate health or safety,' he 'cannot be found liable under the Cruel and Unusual Punishments Clause' if he 'responded reasonably to the risk.'"  *Wade*, 106 F.4th at 1258, 1262 (quoting *Farmer v. Brennan*, 511 U.S. 825, 844-45 (1994)).  The magistrate judge's analysis of the law included the deliberate indifference standard set out in *Farmer* and comports with *Wade*. (*See* Doc. 39, pp. 57-60).

the history of inmate violence" and the "specific features of St. Clair" that allegedly contribute to excessive inmate violence. (Doc. 44, p. 5; *see* Doc. 39, p. 54). The supervisory defendants also object to the magistrate judge's finding that "'the rate of inmate assaults at St. Clair reflects a generalized risk of violence'" and that the "'risk of inmate-on-inmate violence at [St. Clair] was obvious." (Doc. 44, pp. 5, 14 (quoting Doc. 39, pp. 49, 65)).[4]   The St. Clair supervisors argue that the magistrate judge should have limited his analysis regarding the excessive risk of violence, special features, and the defendants' subjective awareness of the excessive risk of violence to the restrictive housing unit where Mr. Williams was housed; they contend that the magistrate judge erred by considering the alleged risk of violence in St. Clair as a whole. (Doc. 44, pp. 5, 11-12, 14).[5]   The St. Clair supervisors cite the magistrate judge's finding that "'Williams cite[d] only *ten* specific incidents of inmate violence'" that occurred in the RHU before the attack on him and argue that the ten incidents of violence in the RHU between May 2015 and December 2018 do not establish that Mr. Williams was vulnerable to an excessive risk of violence or that the excessive risk of violence was obvious. (Doc. 44, pp. 6, 9, 10 (citing Doc.

---

[4] Defendants Bolling, Pickens, Malone, and White also argue that the magistrate judge erred when he relied on the total number of inmate assaults at St. Clair for 2019, a number that included inmate assaults on correctional officers. (Doc. 44, p. 5). Though the magistrate judge included the number of inmate assaults on correctional officers, he also provided statistics of inmate-on-inmate violence. (*See* Doc. 39, pp. 49-51).

[5] As Mr. Williams notes, the St. Clair supervisor defendants did not make this argument in their motion to dismiss. (Doc. 48, p. 5).

39, p. 51)) (italics in Doc. 44).  The St. Clair supervisors also argue that Mr. Williams has not pleaded causation sufficiently because he has not alleged facts that demonstrate an excessive risk of violence in the RHU.  (Doc. 44, p. 16).

Defendants Bolling, Pickens, Malone, and White do not cite, and the Court has not found, binding authority that requires the Court to limit its consideration of the generalized risk of violence or a specific features analysis to the area in which the violent incident at issue occurred.  The defendants' reliance on *Marbury v. Warden*, 936 F.3d 1227 (11th Cir. 2019), *Harrison v. Culliver*, 746 F.3d 1288 (11th Cir. 2014), and *Lane v. Philbin*, 835 F.3d 1302 (11th Cir. 2016), for this proposition is misplaced.  (*See* Doc. 44, pp. 7-9).  These cases do not hold that a district court must confine its analysis in this manner.  Moreover, Mr. Williams's allegations of a violent incident at St. Clair every four to five days in 2019 differ substantially from the 15 stabbings spread over six years in *Marbury*, 936 F.3d at 1231, and the 33 violent incidents spread over four years in *Harrison*, 746 F.3d at 1299-1300.  (*See* Doc. 39, pp. 37-39).  Though the Eleventh Circuit in *Lane* confined its excessive risk of inmate violence analysis to the area of the prison that Mr. Lane alleged to have an increased risk of violence, *Lane*, 835, F.3d at 1305-06, the Eleventh Circuit did not hold that courts must confine the generalized risk of violence analysis where the violent incident at issue occurred.

5

The magistrate judge thoroughly discussed and correctly applied the Eleventh Circuit's decisions in *Marbury*, *Harrison*, and *Lane* to the alleged facts of this case. (*See* Doc. 39, pp. 37-41). Mr. Williams has adequately pleaded that he was exposed to an excessive risk of inmate violence at the St. Clair Correctional Facility. As the magistrate judge stated, Mr. Williams "plausibly alleges specific features of St. Clair and its population that render it particularly violent," (Doc. 39, pp. 52-57), and Mr. Williams has plausibly alleged that "the heightened risk of inmate violence permeated all of St. Clair based upon the heighted incident rates of violence." (Doc. 39, p. 51). Per the magistrate judge, the "rate of inmate assaults" and the "appreciable number of specific incidents" of inmate violence support Mr. Williams's assertion that he "suffered from a 'constant threat of violence' at St. Clair" and that the risk of inmate violence at St. Clair was obvious to the St. Clair supervisors charged with oversight of the safety and security of the facility. (Doc. 39, pp. 51, 64-67).

Defendants Bolling, Pickens, Malone, and White argue that Mr. Williams has not adequately alleged that they had a subjective awareness of this alleged risk. Mr. Williams alleges that the supervisory defendants were aware of the risk because of an April 2014 EJI notification, a September 2014 class action lawsuit, a November 2017 settlement agreement between EJI and ADOC, and the DOJ's 2016 investigation and 2019 lawsuit against the ADOC. (Doc. 44, p. 14). As the

6

magistrate judge found, Mr. Williams adequately alleges that the St. Clair supervisors had knowledge of the substantial risks associated with the conditions at St. Clair – conditions that included "unrestrained and unrestricted movement in the segregation units, proliferation of weapons, understaffing, and inadequate supervision" – based on the pervasive inmate violence documented in "internal reports, media reports, the DOJ report and negotiation, EJI letters, the class action lawsuit, and multiple individual inmate lawsuits." (Doc. 39, p. 67). St. Clair supervisor Malone was a defendant in the 2014 class action lawsuit, and defendant Bolling was copied on the April 2019 letter regarding the DOJ's investigation of the excessive violence in Alabama's prisons, including St. Clair. (Doc. 1, pp. 67, 72, 112); *Cheatham*, 4:14-cv-01952-RDP, Doc. 1, pp. 1, 6. It is plausible that defendants Bolling, Pickens, Malone, and White, who were high-ranking supervisors at St. Clair, knew of the EJI letters, the 2014 litigation and 2017 settlement, and the DOJ report and negotiations regarding the St. Clair facility.

As the magistrate judge explained, Mr. Williams plausibly alleges that St. Clair supervisors Bolling, Pickens, Malone, and White were deliberately indifferent to the excessive risk of violence at St. Clair and that the defendants' deliberate indifference caused his injuries. (Doc. 39, pp. 55-73, 77-80). The case law the magistrate judge cited in his report clearly establishes that Mr. Williams's allegations regarding the excessive risk of violence at St. Clair, the St. Clair

7

supervisors' deliberate indifference toward that risk, and the causal link between the two violate the law and defeat the affirmative defense of qualify immunity at this stage of the litigation. (Doc. 39, pp. 34-47). Therefore, the Court overrules defendants Bolling's, Pickens's, Malone's, and White's objections on this claim.

Mr. Williams objects to the magistrate judge's finding that he did not plead a plausible excessive risk of inmate violence claim against St. Clair supervisors Weaver, Scott, and Dent; St. Clair correctional officers Howard and Crawford; and ADOC supervisors Dunn, Mercado, Sides, Ellington, McDonnell, Naglich, Brand, Culliver, Daniels, Williams, and Abbott. (Doc. 45, p. 6).

Regarding St. Clair supervisors Weaver, Scott, and Dent and correctional officers Crawford and Howard, Mr. Williams argues that he has established a "plausible inference that [these] [d]efendants exercised sufficient authority and discretion over the safety and security at St. Clair that would have empowered them to address the totality of conditions underlying the alleged, excessive risk of violence." (Doc. 45, pp. 9-10). The Court disagrees. As the magistrate judge explained, Mr. Williams has not alleged sufficiently that defendants Weaver, Scott, and Dent exercised authority over inmate safety at St. Clair as a whole; their authority was limited to enforcing policies in the RHU. (Doc. 1, pp. 9-12, ¶¶ 17-23; s*ee* Doc. 39, pp. 71-73). The Court will dismiss Mr. Williams's excessive risk of violence claim against defendants Weaver, Scott, and Dent without prejudice.

Regarding St. Clair correctional officers Crawford and Howard, as the magistrate judge stated, Mr. Williams has not plausibly alleged that either could adopt and enforce safety policies, address understaffing, or discipline officers who did not enforce safety and security policies.  (Doc. 39, pp. 33-34).  The Court will dismiss without prejudice Mr. Williams's excessive risk of violence claim against defendants Crawford and Howard.

Mr. Williams's objections regarding the ADOC supervisors have some merit. Mr. Williams has alleged facts from which the Court may infer that the ADOC supervisors knew about the excessive risk of violence at St. Clair.  Mr. Williams plausibly alleges that the ADOC supervisors had subjective knowledge of the substantial risk of serious harm that he faced at St. Clair based on the longstanding, pervasive, well documented excessive inmate violence at St. Clair; internal reports; media reports; the DOJ report and negotiations; EJI letters; the 2-14 class action lawsuit and 2017 settlement; and many individual inmate lawsuits.  (Doc. 1, pp. 24-31, ¶¶ 70-93; Doc. 39, pp. 11-18, 64-67).  ADOC supervisor defendants Dunn and Culliver were defendants in the 2014 *Cheatham* class action lawsuit and parties to the agreement that settled the class action.  (Doc. 1, pp. 25-26, ¶ 76); *Cheatham*, 4:14-cv-01952-RDP, Doc. 1, pp. 1, 5.  Defendant Dunn received a copy of the 2019 DOJ report that described incidents of violence at St. Clair.  (Doc. 1, pp. 109-110; Doc. 1, p. 26, ¶ 79).  Mr. Williams sufficiently alleges that the ADOC supervisors

had subjective knowledge of the "extreme violence," understaffing, "unrestrained and unrestricted movement in the RHU," inadequate supervision, and "proliferation of weapons contraband" throughout St. Clair that exposed him to an excessive risk of inmate violence. (Doc. 1, pp. 54-55, ¶¶ 124, 128).

Regarding the features specific to the RHU, the magistrate judge found that Mr. Williams did not allege plausibly that each ADOC supervisor knew about the "unsanctioned practices" of St. Clair correctional officers in the RHU, including officers' "fail[ure] to operate a facility in accordance with policies established for security and safety; [and officers] assigning custodial duties to unsupervised and unfit inmates." (Doc. 39, p. 76). The magistrate judge stated that absent knowledge of those features, Mr. Williams could not point to clearly established law that would provide notice to the ADOC supervisors that they could be held liable for deliberate indifference to an excessive risk of violence at St. Clair. (Doc. 39, p. 76). The Court does not adopt the magistrate judge's findings on this point.

Mr. Williams has alleged plausibly, based on the *Cheatham* lawsuit, that ADOC supervisors had subjective knowledge that St. Clair correctional officers and supervisors did not follow and enforce procedures in the RHU to ensure that prisoners did not interact with each other. (Doc. 1, pp. 25-26, ¶¶ 75-76). In *Cheatham*, in 2014, the plaintiff alleged:

> Defendants have also failed to promulgate and enforce adequate and
> effective policies, procedures[,] and practices in the segregation

housing units [in St. Clair] meant to keep prisoners isolated from one another for their protection. Upon information and belief, policy requires that prisoners in segregation be placed in handcuffs before their cell door is opened, and that only one door be open at a time so that prisoners in segregation do not come in contact with each other. In practice, the cube officer frequently rolls the doors from his cube without the placement of handcuffs, allowing for multiple people in segregation to be on the hallway and in the showers at the same time. . . . DOC staff also fail to adequately conduct searches for contraband and knives in segregation. The failure to follow the policies of permitting only one prisoner out of his cell at a time and searching for contraband creates a significant risk of serious harm because these conditions have been the cause of multiple violent assaults. . . .

(Doc. 1, pp. 86-87); *Cheatham*, 4:14-cv-01952-RDP, Doc. 1, pp. 20-21. Based on the allegations in and settlement of the *Cheatham* lawsuit, it is plausible that the ADOC supervisors knew that St. Clair correctional officers and supervisors did not enforce policy in the segregation units to isolate the prisoners from each other and allowed prisoners to enter the segregation hallways unrestrained and unsupervised. The unrestricted and unsupervised movement of prisoners in the RHU led to Mr. Williams's attack. (*See* Doc. 1, pp. 25-26, 67). Therefore, Mr. Williams has plausibly alleged that the ADOC supervisors knew that St. Clair correctional officers did not operate the segregation units, including the RHU, in accordance with policies established for the safety and security of prisoners.

For a claim based on dangerous prison conditions or generalized risk of inmate violence, Mr. Williams does not have to show that the ADOC supervisors knew of the specific risks posed by Mr. Williams's attacker. It is enough that the supervisors

knew that the special features in the RHU, i.e., that St. Clair prison officials did not comply with safety procedures restricting prisoner movement in the RHU, contributed to the excessive risk of violence that Mr. Williams faced. At this stage in the litigation, Mr. Williams has sufficiently pleaded that the ADOC supervisors knew about the excessive risk of violence at St. Clair and knew that the St. Clair prison officials did not follow the policies established for safety and security in the RHU.

Mr. Williams has plausibly alleged that ADOC supervisors Dunn, Mercado, Sides, Ellington, McDonnell, Brand, Culliver, Daniels, Williams, and Abbott had sufficient authority and power to take measures to reduce the risk of violence at St. Clair and in the RHU. (See Doc. 1, pp. 5-8, 54-56, ¶¶ 5-15, 125, 127-30). Mr. Williams plausibly alleges that ADOC supervisors Dunn, Mercado, Sides, Ellington, McDonnell, Brand, Culliver, Daniels, Williams, and Abbott "had supervisory responsibilities over ADOC, including control over policies and practices relating to St. Clair security, operations, staffing, and training," (Doc. 1, p. 55, ¶ 127), but Mr. Williams does not allege plausibly that defendant Naglich had control over policies and practices related to security and safety at St. Clair such that she could take steps to remedy the dangerous condition there. Mr. Williams alleges that Ms. Naglich was ADOC's Associate Commissioner of Health Services and was "responsible for the administration of medical and mental health services to individuals in custody at St.

Clair." (Doc. 1, pp. 6-7, ¶ 10). Mr. Williams alleges that "[u]nder [Ms. Naglich's] leadership, [he] was denied and continues to be denied adequate follow-up medical and mental healthcare for his attack-related injuries at St. Clair following his discharge from the hospital." (Doc. 1, p. 7, ¶ 10). Mr. Williams does not assert a count for deliberate indifference to his serious medical needs, and these facts are irrelevant to the claims Mr. Williams has asserted. Mr. Williams has not alleged plausible facts that indicate that Ms. Naglich had authority that would allow her to adopt measures to reduce the risk of violence to Mr. Williams. Therefore, the Court will grant defendant Naglich's motion to dismiss this claim.

### Count II—State-Created Danger

Mr. Williams objects to the magistrate judge's recommendation that the Court dismiss the state-created danger claim against the defendants. (Doc. 45, pp. 11-13).[6] The ADOC supervisors assert that the "Eleventh Circuit arguably does not recognize a claim for 'state-created danger'" and "[e]ven if such a claim exists, [Mr. Williams] fails to allege how any ADOC official individually bears responsibility for another inmate's stabbing" of Mr. Williams. (Doc. 21, p. 15).[7] The Court does not adopt the magistrate judge's analysis regarding this claim.

---

[6] Mr. Williams asserts his state-created danger claim against all defendants under both the Eighth and Fourteenth Amendments. (Doc. 1, p. 60, ¶ 149).

[7] In his response to the ADOC supervisors' motion to dismiss, Mr. Williams did not address this argument. (Doc. 27). In their reply brief, the ADOC officials contend that because Mr. Williams did not respond to their argument, he "conced[ed] to the dismissal" of his state-created danger

Generally, the Eighth Amendment's cruel and unusual punishment clause requires prison officials to "take reasonable measures to guarantee the safety of the inmates." *Farmer*, 511 U.S. at 832. The Fourteenth Amendment's due process clause generally "prevent[s] the government from abusing its power, or employing it as an instrument of oppression." *DeShaney v. Winnebago Cnty. Dept. of Soc. Serv.*, 489 U.S. 189, 196 (1989) (quotations and alterations omitted). Usually, the Eighth Amendment "serves as the primary source of substantive protection to

---

claim. (Doc. 31, pp. 5-6). At the motion to dismiss stage, a plaintiff does not abandon his claims by not responding to the defendants' arguments. *See Boyd v. Peet*, 249 Fed. Appx. 155, 157 (11th Cir. 2007) (finding that "at the motion to dismiss stage, the scope of a court's review must be limited to the four corners of the complaint" and that the "district court erred by going beyond the face of the complaint" in finding that Boyd abandoned his claims "by failing to adequately address them in his response brief") (citing *St. George v. Pinellas Co.*, 285 F.3d 1334, 1337 (11th Cir. 2002), for the proposition that a district court is limited to the "four corners of the complaint" at the motion to dismiss stage). The "appropriate inquiry at this stage of the litigation [is] whether the allegations of the complaint plausibly indicate that [Mr. Williams] has a claim for relief." *Boyd*, 249 Fed. Appx. at 157 (alterations added). As such, Mr. Williams has not abandoned this claim.

The ADOC officials did not argue in their motion to dismiss that Mr. Williams's Eighth Amendment excessive risk of inmate violence claim subsumes his state-created danger claim. (Docs, 20, 21). The ADOC officials also did not argue they are immune from Mr. Williams's state-created danger claim. (Docs. 20, 21). In their response to Mr. Williams's objections, the ADOC supervisors agreed with the magistrate judge's finding that the Eighth Amendment subsumed the state-created danger claim, but they did not address qualified immunity regarding this claim. (Doc. 47, pp. 10-12).

St. Clair supervisors Bolling, Pickens, Malone, White, Weaver, Scott, and Dent and correctional officers Howard and Crawford did not request dismissal of Mr. Williams's state-created danger claim. (*See* Docs. 18, 19). The St. Clair officials addressed Mr. Williams's state-created danger claim in their response to Mr. Williams's objections to the magistrate judge's dismissal of this claim against them. (Doc. 46, pp. 4-6). The Court will consider the officials' argument. *See Stephens v. Tolbert*, 471 F.3d 1173, 1176-77 (11th Cir. 2006) (explaining that a district judge has broad discretion to consider "an argument that had not been presented to the magistrate judge").

convicted persons," *Whitley v. Albers*, 475 U.S. 312, 327 (1986), but a prisoner may state a Fourteenth Amendment substantive due process claim concerning prison conditions.  As the Supreme Court has explained:

> When the state by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause . . . In the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty—which is the "deprivation of liberty" triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means.

*DeShaney*, 489 U.S. at 200.  The Eleventh Circuit has not abolished state-created danger claims under the Fourteenth Amendment for prisoners alleging harms they suffered while in state custody.  *See Johnson v. Dunn*, 2:21-cv-1701-AMM, 2024 WL 1076802, *21 (N.D. Ala. Mar. 12, 2024) ("Mr. Johnson is right about the existence of a state-created danger claim in a custodial setting.").

Here, Mr. Williams's custodial status "automatically g[a]ve rise to a governmental duty, under substantive due process, to protect [him] from harm by third parties." *Perez-Guerrero v. U.S. Atty. Gen.*, 717 F.3d 1224, 1233 (11th Cir. 2013) (internal quotation omitted).  Mr. Williams plausibly alleges facts from which the Court reasonably may infer that the ADOC officials "placed Mr. Williams in a position of danger that he would not have otherwise faced," that they "knew of and

consciously disregarded that substantial risk that Mr. Williams would be injured while in custody at St. Clair," that they "failed to take reasonable steps to address the known and unreasonable risk of serious harm to Mr. Williams resulting from State's creation," and that their misconduct "directly and proximately caused Mr. Williams to be subjected to an unreasonable risk of serious harm" and "caused him to suffer damages." (Doc. 1, pp. 61-62, ¶¶ 148-55). The Court sustains Mr. Williams's objections regarding his state-created danger claim and will not dismiss the claim.

### *Count III—Failure to Intervene*

Mr. Williams objects to the magistrate judge's recommendation that the Court dismiss his failure to intervene claim. (Doc. 45, pp. 13-15). Mr. Williams argues that the magistrate judge took too narrow a view of his failure to intervene claim. (Doc. 45, p. 14). Mr. Williams asserts that the defendants violated his constitutional rights when they did not "prevent a substantial risk of harm that he faced due to St. Clair's failure to restrain inmates when cells were unlocked and to keep the prison's dormitory doors locked." (Doc. 45, p. 14). He asserts that the defendants were "in a position to intervene in order to prevent that constitutional violation." (Doc. 45, p. 14). As the magistrate judge found, Mr. Williams has not alleged that any defendant was positioned to intervene "because none were present to observe or halt" the attack on him. (Doc. 39, pp. 84-85). Mr. Williams alleges that Officers Howard and

16

Crawford apologized to him because they were not at their assigned posts and were not in a position "to intervene or protect" him. (Doc. 1, p. 21, ¶ 59). The officers' absence does not give rise to a failure to intervene claim. Because Mr. Williams has not alleged that the defendants were present during the attack and failed or refused to intervene during the attack, his failure to intervene claim fails. *See Ensley v. Soper*, 142 F.3d 1402, 1407 (11th Cir. 1998); (s*ee* Doc. 39, pp. 83-84) (discussing the law that governs failure to intervene claims).

Mr. Williams argues that Officers Crawford's and Howard's absence was reckless and that depriving him of a failure to intervene claim will "permit prison guards to escape liability in failure to intervene cases simply by taking themselves out of a position to intervene through the abandonment of their assigned posts." (Doc. 45, p. 14). As the magistrate judge explained, Mr. Williams's allegations concerning the officers' purported abandonment of their posts may support a negligence claim, but under Eleventh Circuit precedent, an officer cannot be liable for failing to intervene to prevent an injury if the officer was not present and able to intervene. (Doc. 39, pp. 83-84); *see Williams v. Rickman*, 759 Fed. Appx. 849, 853 (11th Cir. 2019) ("The undisputed relevant facts indicate that Warden Barfield was not present at Mr. Williams' cell when the use of force occurred. Because he was not in a position to intervene in the excessive use of force against Mr. Williams,

Warden Barfield cannot be held liable for failure to intervene.") (citing *Hadley v. Gutierrez*, 526 F.3d 1324, 1331 (11th Cir. 2008)).

Therefore, the Court will dismiss Mr. Williams's failure to intervene claim.

### Count IV—Outrage

Mr. Williams objects to the magistrate judge's recommendation to dismiss the outrage claim against all defendants. (Doc. 45, pp. 17-19). Mr. Williams argues that he has pleaded sufficient facts to support his outrage claim by alleging that the defendants "conscious[ly] disregard[ed]" the "norms of civilized society" and allowed "violent inmates like Mr. Spencer to run rampant throughout the halls of St. Clair with easy access to lethal weapons and inflict violence on other inmates like Mr. Williams." (Doc. 45, p. 18). Mr. Williams asserts that the defendants' deliberate indifference to the "breadth, severity, and frequency of the violence at St. Clair" reflects a "Dickensian picture" and "places Mr. Williams'[s] outrage claim at least within the same zone of 'outrageousness' presented by 'wrongful conduct in the family-burial context[,]' . . . 'barbaric methods employed to coerce an insurance settlement[,]' . . . and 'egregious sexual harassment.'" (Doc. 45, pp. 18-19) (internal citations omitted). As the magistrate judge explained, the Alabama Supreme Court has not extended the tort of outrage to prison settings, so the Court declines to do so here. (Doc. 39, p. 95). The Court will dismiss Mr. Williams's outrage claim.

### *Count V—Negligence*

With respect to Mr. Williams's negligence claim, St. Clair defendants Bolling, Pickens, Malone, White, Weaver, Scott, Dent, Crawford, and Howard object to the magistrate judge's finding that Mr. Williams sufficiently pleaded facts to show that they were not entitled to state agent immunity. (Doc. 44, pp. 19-22; *see* Doc. 39, pp. 91-92, 95-99). They also object to the magistrate judge's finding that Mr. Williams plausibly alleges the causation element of his negligence claim. (Doc. 44, p. 22; *see* Doc. 39, pp. 97-99).

The magistrate judge correctly found that Mr. Williams's "averment regarding 'unrestrained and unrestricted movement in the RHU' plausibly alleges a violation of St. Clair policies" and that the violation "substantially caused his attack." (Doc. 39, p. 97). For the same reasons that Mr. Williams adequately pleaded causation for his excessive risk of inmate violence claim under § 1983, he plausibly pleaded proximate causation for his negligence claim. The Court overrules the St. Clair defendants' objections regarding Mr. Williams's negligence claim.

Mr. Williams objects to the magistrate judge's finding that the ADOC supervisors are entitled to state-agent immunity because he did not allege a plausible constitutional violation against them and "did not plausibly allege they knew about the contraventions of the RHU lockdown policy." (Doc. 39, pp. 91, 92). As the magistrate judge stated, Mr. Williams's negligence claim concerns a discretionary

function that would entitle the ADOC defendants to state-agent immunity if a *Cranman* exception did not apply. (*See* Doc. 39, p. 88). Because Mr. Williams plausibly alleges that ADOC supervisors Dunn, Mercado, Sides, Ellington, McDonnell, Brand, Culliver, Daniels, Williams, and Abbott violated his Eighth Amendment right to protection from excessive risk of inmate violence, a *Cranman* exception applies, and these ADOC defendants do not have state-agent immunity for the negligence claim. *See Taylor v. Hughes*, 920 F.3d 729, 734-35 (11th Cir. 2019) (finding that "state-agent immunity do[es] not immunize [defendants] from liability under state law if they violated [a plaintiff's] constitutional rights"). Because Mr. Williams has not alleged a viable constitutional claim against ADOC supervisor Naglich and has not alleged sufficient facts to demonstrate that Ms. Naglich acted willfully, maliciously, fraudulently, in bad faith, or beyond her authority with respect to prisoner safety at St. Clair, supervisor Naglich is entitled to state-agent immunity on Mr. Williams's negligence claim.

The Court will dismiss Mr. Williams's negligence claim against ADOC defendant Naglich.

## Conclusion

For the reasons explained in this memorandum opinion and order, the Court overrules defendants Bolling's, Pickens's, Malone's, and White's objections and denies their motion to dismiss the Eighth Amendment excessive risk of inmate

violence claim, (Docs. 18, 19). The Court overrules Mr. Williams's objections and grants defendants Weaver's, Scott's, Dent's, Crawford's, Howard's, and Naglich's motions to dismiss the Eighth Amendment excessive risk of inmate violence claim, (Doc. 18, 19). The Court sustains Mr. Williams's objections and denies defendants Dunn's, Mercado's, Sides's, Ellington's, McDonnell's, Brand's, Culliver's, Daniels's, Williams's, and Abbott's motions to dismiss the Eighth Amendment excessive risk of inmate violence claim, (Docs. 20, 21).

The Court sustains Mr. Williams's objections and denies the ADOC supervisors' motion to dismiss the state-created danger claim, (Docs. 20, 21). The Court overrules Mr. Williams's objections and grants the defendants' motions to dismiss the failure to intervene and outrage claims, (Docs. 18, 19, 20, 21). The Court overrules defendants Bolling's, Pickens's, Malone's, White's, Weaver's, Scott's, Dent's, Crawford's, and Howard's objections and denies their motion to dismiss the negligence claim, (Docs. 18, 19). The Court sustains Mr. Williams's objections and denies defendants Dunn's, Mercado's, Sides's, Ellington's, McDonnell's, Brand's, Culliver's, Daniels's, Williams's, and Abbott's motion to dismiss the negligence claim. The Court overrules Mr. Williams's objections and grants defendant Naglich's motion to dismiss the negligence claim, (Docs. 20, 21).

The Clerk of Court shall please TERM Docs. 18, 20, and 39.

The Court refers this case to the magistrate judge for further proceedings so that the parties may propose a scheduling order and begin discovery.  The Clerk shall please TERM Doc. 57 as moot.

**DONE** and **ORDERED** this March 17, 2025.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE